M. P. WADE *et al. v.* SARAH ALICE WADE *et al.*

(No. 8638)

Submitted January 19, 1938. Decided February 15, 1938.

*Mahan, Bacon & White,* for plaintiffs in error.
*Thomas L. Read,* for defendants in error.

MAXWELL, PRESIDENT:

This is a writ of error to a circuit court order refusing

probate of a will. The matter came to that court on appeal from the county court under Code, 41-5-7 and 8.

The precise question is whether the purported last will of F. D. Wade, deceased, the same not being in his handwriting but signed and acknowledged by him, was properly subscribed by each of the two persons whose names are appended as witnesses.

The statute reads: "No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, and of each other, but no form of attestation shall be necessary." Code, 41-1-3.

The conceded facts are these: On April 22, 1935, G. G. Clendennin, at the request of his neighbor, F. D. Wade, prepared a will for him. At that time, in the presence of each other, the testator appended his name to the instrument and Clendennin signed as witness. The testator retained custody of the paper. About a week or ten days later, Wade and Clendennin went together to the store of their friend, H. M. McLaughlin. In the store, the three men being in each other's immediate presence, Wade produced the will from his pocket and requested McLaughlin to witness it. McLaughlin remarked that he had not seen the testator and Clendennin affix their signatures. Whereupon, Wade, raising his right hand as though taking an oath, acknowledged the will, identified his signature, and stated that Clendennin's signature had been made on the will in the testator's presence; and Clendennin, with like formality, identified and acknowledged his signature which he had appended to the instrument on the day the testator signed it. Following these acknowledgments, McLaughlin, in the presence of the testator and Clendennin, wrote his name as a witness.

Wade's acknowledgment of the will and McLaughlin's attestation as a witness were patently within the precise

terms of the statutory requirements.

The inquiry therefore narrows to whether Clendennin signed the will in the presence of the testator and the other witness, as required by statute. Was Clendennin's acknowledgment of his signature in the presence of the testator and McLaughlin tantamount to his actually writing his name at the instant?

From the formation of this state in 1863, to the legislative session of 1882, our statute, inherited from the State of Virginia, did not require that the witnesses to a will subscribe the same in the presence of each other. The additional exaction was imposed to tighten the formality and lessen the opportunities for fraud and imposition. So far as the amendment of the statute had for its purpose the bringing together of the testator and the two witnesses at the same time, there manifestly has been full compliance in the case at bar.

Though the Virginia statute does not, like the present West Virginia statute, require testamentary witnesses to subscribe in the presence of each other, we may nevertheless look with profit to early Virginia decisions for interpretation of the requirement, common to the English, Virginia and West Virginia statutes as well as those of many other states, that the witnesses shall subscribe the will in the presence of the testator. The foremost of these cases is *Sturdivant* v. *Birchett*, 10 Gratt. 67, decided in 1853. The case is thus stated in the syllabus: "A will is executed by the testator, and certain persons are requested by him to attest it. For convenience, they take it into another room, out the vision of the testator, and there subscribe their names to the paper as witnesses; and they immediately, within one or two minutes, return to the testator with the paper; and one of them, in the presence of the other, with the paper open in his hand, addresses the testator, and says, 'here is your will witnessed;' at the same time pointing to the names of the witnesses, which are on the same page and close to the name of the testator. The testator then takes the paper and looks at it as if examining it, and then folds it up; and speaks of it as his will. Held: That under these circumstances, the recognition of their attestation

by the witnesses to the testator, is a substantial subscribing of their names as witnesses in his presence." In the opinion, it was considered that each case must rest on its own facts and circumstances to which the court must look to determine whether there was a subscribing by the witnesses in the presence of the testator; that substantial compliance with the statute is all that is required; that an acknowledgment of a signature is only a signing in another form, and that in principle it is in truth a signing. The authority of the *Sturdivant* case is recognized in the subsequent Virginia case, decided in 1854, of *Parramore* v. *Taylor*, 11 Gratt. 220, 246. Decisions of the Supreme Court of Appeals of Virginia, prior to the division of that state in 1863, have the same status in West Virginia as decisions of our own court.

In the Minnesota case, *Cunningham* v. *Cunningham*, 80 Minn. 180, 83 N. W. 58, 51 L. R. A. 642, 81 Am. St. Rep. 256, a statutory requirement that a will, not holograph, must be subscribed by two witnesses in the presence of the testator, received an identical construction with that of the Virginia court in the *Sturdivant* case. The court very wisely stated that a narrow, rigid construction of the statute should not be allowed to stand in the way of right and justice, or be permitted to defeat a testator's disposition of his property. The cases of *Cook* v. *Winchester*, 81 Mich. 581, 46 N. W. 106, 8 L. R. A. 822, and *Riggs* v. *Riggs*, 135 Mass. 238, 46 Am. Rep. 464, are in accord with the principles applied in the Virginia and Minnesota cases.

We approve the principle employed in the cases cited, that an acknowledgment by a witness of his signature previously made to a will may, under proper circumstances, be equivalent to a re-signing of his name at the time of the acknowledgment. These cases being authority for the proposition that a witness who acknowledges his signature in the presence of the testator in fact signs in his presence, it follows by analogy, if those holdings are sound, and we think they are, that a witness' acknowledgement of his signature in the presence of the testator and of another witness is tantamount to an attaching by him of his signature in the presence of those

persons. Where, as in the case at bar, the facts and circumstances are such as to preclude the possibility of fraud or imposition, a witness' formal acknowledgment of his signature is the equivalent of a signing by him. In circumstances of doubt, a purported, indefinite or unguarded acknowledgment by a witness of his signature would not be construed the equivalent of his signing his name in the presence of the testator and another witness. Each case must stand on its own facts.

We recognize that there is division of authority on the principle herein employed, but, for the reasons presented, we are constrained to the belief that a different holding would be based on illiberal and inflexible construction of the statute, giving pre-eminence to letter and not to spirit, and resulting in the thwarting of the intentions of testators even under circumstances where no possibility of fraud or impropriety exists.

At the trial in the circuit court, the proponents of the 1935 will offered, in conformity with Code, 41-5-8, a purported holograph will of the testator executed in 1914, making substantially the same disposition of his property as was made by the later will. The 1935 will, here upheld, of necessity operates as a revocation of the earlier instrument, if in fact it was a will. There is therefore no occasion for discussion of the paper of 1914.

For reasons set forth, we reverse the order of the trial court respecting the will of April 22, 1935, and remand the case for the probate of that instrument.

*Reversed and remanded.*